**DENISE M. CLARK, ESQ**
**D.C. Bar  #420480**
**1250 Connecticut Ave, N.W., Ste. 200**
**Washington, D.C. 20036**
**(202) 293-0015;  FAX:  (202) 293-0115**
**Attorney for Plaintiff**

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| SONYA PETTAWAY,<br>11000 Ironwood Drive<br>Hopewell, Virginia 23860<br><br>            Plaintiff,<br><br>    vs.<br><br>TEACHERS INSURANCE AND ANNUITY<br>ASSOCIATION  OF AMERICA,<br>730 Third Ave.,<br>New York, NY 10017;<br><br>NATIONAL ACADEMY OF SCIENCES<br>GROUP TOTAL DISABILITY INSURANCE<br>PLAN,<br>2101Constitution Ave., N.W., Washington, D.C.<br>20418 ;<br><br><br>THE STANDARD BENEFIT<br>ADMINISTRATORS<br>P.O Box 5031<br>White Plains, NY 10602<br><br><br>          Defendants.<br>_____ | Case No.  1:07-CV-01721<br>(RBW) |

## PLAINTIFF'S MEMORANDUM OPPOSING DEFENDANTS' MOTIONS TO DISMISS
## PURSUANT TO FRCP 12(b)(6)

NOW COMES PLAINTIFF, and in response to the Motions to Dismiss filed by the named Defendants, presents this single brief  in opposition to Defendants' respective Motions as both Defendants raise the same basis for dismissal of this action.  Defendants assert that Plaintiff's complaint is barred by the governing statute of limitations.  Both Defendants assert that courts apply federal law to determine the applicable statute of limitations and decide when the applicable statute of limitations begins to run in a claim for benefits under ERISA.[1]  Further, both Defendants argue that the applicable statute of limitations in the District of Columbia is the three (3) year period for breach of contract actions under D.C. Code §12-301(7) (2007).

Plaintiff concedes that the applicable statute of limitations, as adopted by the D.C. Circuit in *Connors v. Hallmark & Sons Coal Co.*, 935 F. 2d 336 (D.C. Cir. 1991), is three (3) years.  However, contrary to the position of both Defendants, who assert that the statute accrued on August 31, 2004 when the plan administrator initially denied Plaintiff's claim for benefits, Plaintiff asserts that the statute of limitations did not accrue before she exhausted the internal remedies of Defendants' plan.  As discussed below, the administrative review did not conclude before March 15, 2005, when the plan administrator notified Plaintiff that the independent review was completed, the August 31, 2004 benefit denial was upheld, and that she could commence legal action under ERISA Section 502, 29 U.S.C §1132.  Therefore, because she could not commence this action before March 15, 2005, following the conclusion of the internal appeal procedure, Plaintiff's complaint is not time barred.

---

[1] Plaintiff notes that only the Teachers Insurance and Annuity Association of America asserts that the dismissal should be pursuant to Federal Rule of Civil Procedure 12(b)(6), but assumes that the National Academy of Sciences also seeks to dismiss pursuant to the same rule.

**Exhaustion of Administrative Remedies**

Not every circuit has concluded that exhaustion of administrative remedies is required, but it is well established that, barring exceptional circumstances, plaintiffs in the District of Columbia who are seeking a determination of rights under their ERISA-governed plans, must exhaust remedies under such plans.   While the requirement is not statutory, courts across the country, including the District of Columbia Circuit, have applied such a requirement as a matter of judicial discretion.  The seminal decision in this Circuit is *Communication Workers of America v. American Telephone and Telegraph Co.*, 40 F. 3d 426 (D.C. Cir. 1994), in which the court concluded that it would ***not*** assume that the initial claims denial letter was enough to show futility of internal plan remedies.  The Court went on to conclude that premature judicial interference which results a participants' failure to exhaust internal plan remedies prevents a plan administrator's review of claim determinations and deprives a plan administrator's ability to correct errors, and exercise his discretion when interpreting plan provisions.

This district has concluded that administrative remedies must be exhausted before the denial of long-term disability benefits under a welfare benefit plan can be challenged under ERISA.  See *Hunter v. Metro Life Insurance Co.*, 251 F. Supp. 2d 107 (D.D.C. 2003).  The court in *Hunter* concluded that because the plan in question had established an appeal procedure, the insurers letter denying benefits was the initial determination of the claim and did not reflect a determination based on review, and was insufficient to exhaust to administrative remedies under the plan, including an independent review of the initial claim decision, about which the Plaintiff had been notified.  Consequently, the plaintiff in that case filed her ERISA action prematurely.

3

In this case, the Defendants' ERISA-governed plan is subject to the regulatory requirements of ERISA § 503, 29 U.S. C. § 1133, and its corresponding regulations.  The Department of Labor's regulations became effective for plan years after July 1, 2002 and compliance was required no later than January 1, 2003 for all ERISA plans; well before Plaintiff's claim was denied.  Under 29 C.F.R. §  2560.503-1(h), an ERISA-governed disability plan must provide a claimant 60 days to appeal the initial determination, and in reviewing the adverse benefit determination which is based upon a medical judgment, the fiduciary must consult with an appropriate health care professional who was not the same medical professional who was consulted during the initial claim determination.  See, 29 CFR § 2560.503-1(h)(3)(iv),(v).  Without referencing ERISA and the governing regulations, the policy suggests a procedure pursuant to which the initial claims determinations under the policy would be reviewed.  See Exhibit 1, page 6.1 and 6.2.  That language was sufficient enough for the Plaintiff to submit a request for review on October 18, 2004, before the 60-days expired.

In correspondence dated March 15, 2005, the Defendants' plan administrator placed the Plaintiff on notice that it received her October 18, 2004 letter seeking review of the initial claim determination dated August 31, 2004.  See Exhibit 2.  Without commenting on the sufficiency of the review and its compliance or noncompliance with the governing regulations, it is clear from the closing paragraphs of that letter, the plan administrator considered the Plaintiff as having received the regulatory required independent review, and the March 15, 2005 letter reflected the conclusion of the administrative review.  Further in that correspondence, the plan administrator affirmatively stated that with the conclusion of its review of the initial claim determination, the Plaintiff now had the right to file suit under ERISA Section 502, clearly signaling that prior to exhaustion of its administrative procedure such an action under ERISA was premature.

4

Defendant's cannot adopt a review procedure, as required by the Department of Labor Regulations, and then declare its unimportance by asserting that its claim's denial letters constitutes a repudiation of benefits in order to trigger the clock on the statute of limitations for commencing litigation to enforce plan terms. Defendants' reliance on *Walker v. Pharma. Research & Mfrs. of Am.*, 429 F. Supp. 2d 52 (D.D.C. 2006), as setting the standard for accrual of the statute of limitations for ERISA § 502(a)(1)(B) claims, is misplaced. First the case involves both an alleged ERISA § 502(a)(1)(B) and §510 violation arising out of the plaintiff's understanding of her employment contract and impact of her classification as an independent contractor versus a part-time employee in relation to the her participation in the employer's benefit plans. In that case, the plaintiff was presented a contract that clearly stated that, as an independent contractor, she would not be entitled to participate in the company employee benefit plans, thus clearly repudiating her eligibility for participation and benefits under the plan each time she signed a contract. In that case, the court found the explicit notification that the plaintiff was not a participant in the company plans was a repudiation of her right to benefits *before* she filed a formal claim. See *Walker*, 429 F. Supp. 2d at 56. Further, the court noted that such a finding in this case is in contrast to the typical tolling of a dispute under ERISA §502(a)(1)(B), which "normally coincides with a denial of benefits as part of an administrative process." Consequently, Walker is not applicable her, as Plaintiff was subject to an administrative process that had to be exhausted in advance of initiating litigation in federal court.

Moreover, neither *Heighley v. J.C. Penny Ins., Co.*, 257 F.Supp. 2d 1241 (CD Cal 2003) and *Lewis v. John Hancock Mutual Life Ins. Co.*, 6 F.Supp. 2d 244 (SDNY 1998) are applicable as *Heighley* involves a non-ERISA governed accidental death and dismemberment policy, where there was no internal review procedure for denied claims, and *Lewis* involved a situation

where the participant decided not to pursue the internal procedures.  In both cases, the statute of limitations was triggered by the claim denial letter, as there was no internal review to which the plaintiffs in those cases had access.  Clearly, that is not the case here.


## Conclusion

Plaintiff concedes that the applicable statute of limitations in this case is 3 years. However, Plaintiff disputes when the statute began to run in this matter.  Simply put, the statute of limitations could not commence before Plaintiff exhausted Defendants' internal remedies, *i.e.*, the appeals procedure.   Defendants' assertion that the claim denial letter dated August 31, 2004 triggered the statute of limitations for legal action against the plan, is not supported by case law or the facts.  Instead, the March 15, 2005 correspondence, which responds to Plaintiff's request for review in accordance with the policy terms set forth on pages 6.1 and 6.2, demonstrate that the Defendant was fully engaged in consideration of Plaintiff's submission of documents in support of Plaintiff's appeal and that only on March 15, 2005 were the plan's internal remedies exhausted.

For the reasons set forth herein, Defendant's respective Motions to Dismiss should be denied.

Respectfully submitted,


_____s/Denise M. Clark_____

Denise M. Clark (DC 420480)
Attorney for Plaintiff

The Law Office of Denise M. Clark, PLLC
1250 Connecticut Ave., N.W., Ste. 200
Washington, DC 20036
Phone: (202) 293-0015
Fax:    (202) 293-0115

7

**EXHIBIT 1**



**Teachers Insurance and Annuity Association**
730 Third Avenue
New York, NY 10017-3206

## YOUR GROUP TOTAL DISABILITY INSURANCE CERTIFICATE

**EMPLOYER**                National Academy of Sciences

**POLICY NUMBER**           D-1129

The benefits described in this certificate apply to a term of Total Disability beginning on or after June 1, 1998.

The Table of Contents on the next page will help you locate important items, such as the date you become eligible, the benefits and definitions of terms.

### PLEASE READ THE ENTIRE CERTIFICATE. IT IS IMPORTANT.

This certificate details the main features of the insurance provided under the group policy issued to your Employer by Teachers Insurance and Annuity Association of America (TIAA). Subject to the terms and conditions of the group policy, you are insured for the benefits described in this certificate. Your insurance will take effect only if you are eligible for insurance and become and remain insured under the group policy.

This certificate replaces any other certificates that may have been previously issued to you describing this insurance.

*John H. Biggs*

*Chairman and*
*Chief Executive Officer*

Teachers Insurance and Annuity Association

3400

### TABLE OF CONTENTS

PART                                                                        Page(s)

1    TOTAL DISABILITY INSURANCE AT A GLANCE . . . . . . . . . . . . . . . . . . . . . . . 1.1
     ELIGIBILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1.1
     BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1.2
     OTHER FEATURES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1.4
     DISABILITIES NOT COVERED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1.4

2    ELIGIBILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2.1
     To Be Eligible for Insurance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2.1
     You Will Become Eligible for Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . 2.1
     If You Are Rehired . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2.2
     To Become Insured . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2.3
     You Will Become Insured . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2.3
     The Cost For The Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2.3

3    DISABILITY BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.1
     Benefits Will Be Payable  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.1
     After Benefits Start, They Will Continue To Be Payable . . . . . . . . . . . . . . . . . 3.1
     TYPES OF BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.3
     (A) The Monthly Income Benefit  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.3
     (B) The Monthly Annuity Premium Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . 3.4
     (C) The Annual Benefit Increase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.5
     (D) The Survivor Income Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.6
     TYPES OF SERVICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.7

4    DISABILITIES NOT COVERED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.1
     No Benefits Will Be Paid  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.1

5    WHEN INSURANCE CEASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.1
     Your Insurance Will Cease . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.1
     CONVERSION OF TOTAL DISABILITY INSURANCE . . . . . . . . . . . . . . . . . . 5.2

6    REQUESTING INFORMATION AND APPLYING FOR BENEFITS . . . . . . . . . . . 6.1
     Requesting Information  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6.1
     (A) Applying for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6.1
     (B) Delays . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6.1
     (C) Service of Legal Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6.1
     Applying for Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6.1
     (A) Time Limits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6.1
     (B) Denied Application for Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6.2
     (C) Asking for a Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6.2
     (D) Delays  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6.2

7     GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.1
Notice of Claim, Proof of Total Disability and Other Proofs . . . . . . . . . . . . . . . . . . . 7.1
(A) Written Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.1
(B) Delays in Giving Notice or Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.1
(C) Types of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.1
(D) Other Proofs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.1
Overpayment of Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.2
Assignment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.2
The Group Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.2
Legal Proceedings Against TIAA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.2
Service of Process Upon TIAA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.3
Incontestability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.3

8     DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.1
Written Election . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.1
Total Disability or Totally Disabled . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.1
Normal Occupation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.1
Regular Care . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.1
Active Work or Actively at Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.1
Monthly Wage Base . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.2
Physician . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.2
Benefits From Other Sources . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.3
(A) Social Security or Similar Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.3
(B) Workers' Compensation or Similar Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.4
(C) Other Plan Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.4
(D) Other Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.4
Changes in the Amounts of Benefits From Other Sources . . . . . . . . . . . . . . . . . . . . 8.4

9     EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA) . . . . . . . . . . . . . . 9.1

## PART 1: THE TOTAL DISABILITY INSURANCE ...

### ... AT A GLANCE

PART 1 is a brief outline of this plan.  Please be sure to READ THE ENTIRE CERTIFICATE for complete details.

### ELIGIBILITY

**Eligible Class(es)**

Class 1      All full-time permanent Employees who are salaried Employees.

Class 2      All full-time permanent Employees who are salaried Employees who have attained age 30 and who have completed 1 year of service.

**Work Test**

Employees must work at least 18¾ hours a week to be considered full-time Employees.

**Waiting Period**

For Employees in an eligible class on the date the group policy takes effect:

Class 1      1 year of service in an eligible class

Class 2      On the date you attain your 30th birthday

For Employees who enter an eligible class after the date the group policy takes effect:

Class 1      1 year of service in an eligible class

Class 2      On the date you attain your 30th birthday

-1.1-

D-1129

**PART 1: THE TOTAL DISABILITY INSURANCE ...**

**... AT A GLANCE (CONT'D)**

---

PART 1 is a brief outline of this plan.  Please be sure to READ THE ENTIRE CERTIFICATE for complete details.

---

**BENEFITS**

---

**Benefits Start**

...as of the first day of the month after the end of the Elimination Period.  The Elimination Period is the longer of:

(A)    6 months of continuous Total Disability; or

(B)    any period you are eligible to receive payments in each calendar month equal to your full Monthly Wage Base under your Employer's short term disability plan (whether insured or not-insured), or under your Employer's sick leave or salary continuation program.

**Benefits Continue**

...during a term of continuous Total Disability until the following age or time limit:

| Age When Total Disability Starts | Age or Time Limit |
|---|---|
| Less than 60 | to age 65 |
| 60 but less than 65 | 4½ years |
| 65 but less than 68½ | to age 70 |
| 68½ or over | 1 year |

**Benefit Types and Amounts:**

**(A) The Monthly Income Benefit**

...equals 60% of your Monthly Wage Base not to exceed a benefit of $10,000 per month, less the sum of the Benefits From Other Sources (see PART 8: DEFINITIONS) that apply to the same month.

In no event will the Minimum Monthly Income Benefit be less than $100; or if greater, 10% of the Monthly Income Benefit before Benefits From Other Sources are subtracted.

-1.2-

D-1129

**PART 1: THE TOTAL DISABILITY INSURANCE ...**

**... AT A GLANCE (CONT'D)**

PART 1 is a brief outline of this plan. Please be sure to READ THE ENTIRE CERTIFICATE for complete details.

**(B) The Monthly Annuity Premium Benefit**

The Monthly Annuity Premium Benefit equals a percentage of your Monthly Wage Base as determined by your attained age as follows:

| Attained Age | Monthly Annuity Premium Benefit as a Percentage of the Monthly Wage Base of the first $26,000 of annual salary | Monthly Annuity Premium Benefit as a Percentage of the Monthly Wage Base for salary amounts in excess of $26,000 |
|---|---|---|
| Less than 35 | 4% | 6% |
| 35 but less than 45 | 7% | 10% |
| 45 but less than 55 | 9% | 14% |
| 55 and over | 14% | 19% |

As your attained age increases during Total Disability, the Monthly Annuity Premium Benefit will be adjusted to conform to the above Schedule. The adjustment will take effect on the first day of the month that falls on or next follows the date of such change in attained age.

This benefit will be credited to TIAA and/or CREF Group Retirement Annuity Contracts.

**(C) The Annual Benefit Increase**

...will increase the Monthly Income Benefit and Monthly Annuity Premium Benefit each year by 3%.

**(D) The Survivor Income Benefit**

...equals the last Monthly Income Benefit you received, multiplied by 3. It will be paid to your Surviving Dependent(s) if you had been disabled for at least 12 months.

**PART 1: THE TOTAL DISABILITY INSURANCE ...**

**... AT A GLANCE (CONT'D)**

PART 1 is a brief outline of this plan. Please be sure to READ THE ENTIRE CERTIFICATE for complete details.

## OTHER FEATURES INCLUDE

Rehabilitation Service

Social Security Disability Assistance

Eligibility when you are Rehired

A Conversion Privilege
   During the 31 day Conversion Period after your insurance ceases, you can purchase Total Disability Insurance on an individual basis, if you have the right to convert.

   Monthly Income Benefit Maximum:        $10,000

## DISABILITIES NOT COVERED

**No Benefits Will be Paid**
   ...if the Total Disability is caused, or contributed to, by:

   (1)    An intentionally self-inflicted injury;
   (2)    War.

**PART 2: ELIGIBILITY**

**To Be Eligible For Insurance**
   ...you must be in an eligible class and meet any required Work Test shown in PART 1.

**You Will Become Eligible for Insurance**
**If you are a Class 1 Employee**
   ...on the later of

   (1) the date the Group Policy takes effect, if you are in an Eligible Class on that date; or

   (2) on the date after you complete the required Waiting Period shown in PART 1 for your Eligible
       Class. However, if you were insured under a prior employer's group Total Disability
       insurance policy, you will become eligible for insurance on the first day of the month which
       falls on or next follows the date you enter an Eligible Class, if:

       (a) the prior policy provided income benefits for 5 or more years of Total Disability; and

       (b) you were insured under the prior policy within 3 months before the date you entered the
           Eligible Class;

   provided you are Actively at Work on the date you become eligible.  If you are not Actively at
   Work on that date, you will become eligible on the date after you have completed 5 full
   consecutive days of Active Work.

**If you are a Class 2 Employee**
   ...on the later of

   (1) the date the group policy takes effect, if you are in an Eligible Class on that date; or

   (2) on the date after you complete the required Waiting Period shown in PART 1 for your Eligible
       Class;

   provided you are Actively at Work on the date you become eligible.  If you are not Actively at
   Work on that date, you will become eligible on the date after you have completed 5 full
   consecutive days of Active Work.

---

**PART 2: ELIGIBILITY (CONT'D)**

---

**If You Are Rehired**

...within 1 year of the date employment ceased you will become eligible for insurance on:

(1) the date of your re-entry into an eligible class, if you were previously insured under the policy; or

(2) the date you become eligible for insurance as set forth in "You Will Become Eligible for Insurance" above, if you were not previously insured under the policy. All full months of service in an eligible class prior to the date employment ceased will be used in determining this date.

You must be Actively at Work on the date you are to become eligible. If you are not Actively at Work on that date, you will become eligible on the date after you have completed 5 full consecutive days of Active Work. If you are a rehired Employee, your most recent effective date of insurance will be used throughout this certificate as the date you became insured.

-2.2-                                                        D-1129

**PART 2: ELIGIBILITY (CONT'D)**

**To Become Insured**

...**if you are a Class 1 Employee**, you must be an eligible Employee and you must give Written Election to your Employer. It is important for you to give Written Election within 31 days after the date you become eligible. Otherwise, proof of good health will also be required.

...**if you are a Class 2 Employee**, you must be an eligible Employee.

**You Will Become Insured**
**If you are a Class 1 Employee**

...on the first day of the month which falls on or next follows:

(1) the date you become eligible, if Written Election is given to your Employer on or before that date; or

(2) the date your Employer receives your Written Election, if it is given within 31days after the date you become eligible; or

(3) the date TIAA approves your proof of good health furnished at no cost to TIAA, if Written Election is given to your Employer more than 31 days after you become eligible;

**If you are a Class 2 Employee**

...on the date you become eligible.

provided you are Actively at Work on the date the insurance is to begin. If you are not Actively at Work on that date, you will become insured on the date after you have completed 5 full consecutive days of Active Work.

**The Cost For The Insurance**

...is shared by you and your Employer. Your share of the insurance cost is deducted from your wages. You will be informed of your monthly cost when you enroll in the plan. If the cost to you changes, you will be notified by your Employer.

The day before each plan anniversary (see "PART 9: ERISA") marks the end of the plan year. Generally near the end of the plan year, TIAA reviews the plan and the premiums being charged. If a premium change is to be made, TIAA will notify your Employer.

D-1129

**PART 3: DISABILITY BENEFITS**

## WHEN BENEFITS START AND DURATION OF BENEFITS

**Benefits Will Be Payable**
...as of the first day of the month after the end of the Elimination Period shown for when Benefits Start in PART 1, if the following conditions are met:

(1) Total Disability starts while you are insured under the group policy; and

(2) Total Disability does not result from any cause listed in "PART 4: DISABILITIES NOT COVERED"; and

(3) Notice of Claim and Proof of Total Disability are given to TIAA as set forth in "PART 7: GENERAL PROVISIONS"; and

(4) For payment of the Monthly Annuity Premium Benefit, the conditions set forth in "PART 3: TYPES OF BENEFITS (B)" are met.

However, if you:

(1) return to Active Work for your Employer before benefits are payable; and

(2) become Totally Disabled again from the same or related cause within 90 days of your return to Active Work;

the term of Total Disability will be considered continuous. Any days of Active Work, however, will not count toward meeting the Elimination Period. This paragraph will not apply if you return to Active Work after the date the policy terminates.

No benefits will be payable for the Elimination Period shown in PART 1 for when Benefits Start.

**After Benefits Start, They Will Continue To Be Payable**
...each month during your term of continuous Total Disability. The last benefit payment will be made as of the first day of the month in which the earlier of these events occurs:

(1) You are no longer Totally Disabled; or

(2) You reach a limit shown under "Benefits Continue" in PART 1.

3400BSD                              -3.1-                              D-1129

**PART 3: DISABILITY BENEFITS**

**WHEN BENEFITS START AND DURATION OF BENEFITS (CONT'D)**

**Recurrent Total Disability**

If, after benefits cease because you are no longer Totally Disabled, you:

(1) return to Active Work for your Employer; and

(2) become Totally Disabled again from the same or related cause within 12 months after the date benefits ceased;

benefits will begin as of the first day of the month after Total Disability starts.

Benefits payable during a term of recurrent Total Disability will be based on the provisions and Monthly Wage Base that applied to the prior term of Total Disability. This provision will not apply to you if you become Totally Disabled after the group policy terminates, nor will it apply to you if while receiving benefits you also attain a limit shown under "Benefits Continue" in PART 1.

3400BSD                    -3.2-                    D-1129

## PART 3: DISABILITY BENEFITS

## TYPES OF BENEFITS

### (A) The Monthly Income Benefit
...is equal to the amount shown in PART 1.

(In the case of the last benefit payment, TIAA will use the amount of Benefits From Other Sources that applied to the prior month.) Benefits From Other Sources are set forth in detail in "PART 8: DEFINITIONS".

In no event will the Monthly Income Benefit be less than the **Minimum Monthly Income Benefit** shown in PART 1.

### Payment of the Monthly Income Benefit
This benefit is payable by TIAA to you as of the first day of each month. Payment is subject to TIAA's right to receive proof of continued Total Disability. TIAA reserves the right to pay any Monthly Income Benefit to any person as trustee for you if the trustee is a person by whom or an institution in which you are being maintained. Before payment is made to any person as trustee, TIAA must be satisfied that you are not able, for physical or mental reasons, to accept the payment. Such payment will discharge TIAA's obligation for that payment. TIAA will not be liable for the acts or neglects of any trustee to whom payment is made.

---

**PART 3: DISABILITY BENEFITS**

---

**TYPES OF BENEFITS (CONT'D)**

---

**(B) The Monthly Annuity Premium Benefit**

...is determined as shown in PART 1.

This benefit will be paid as a premium remitted on your behalf under the terms of your Employer's retirement plan. It will be credited to the TIAA and/or College Retirement Equities Fund (CREF) Group Retirement Annuity contracts for you:

(1) if periodic premiums were being paid at the start of Total Disability under your Employer's retirement plan to a TIAA and/or CREF Group Retirement Annuity contract on your behalf; and

(2) if all or part of such premiums were being paid by your Employer; and

(3) as long as you do not elect, at any time during your Total Disability, the full retirement or lump sum benefit payable from such TIAA and/or CREF contracts under any option available.

The Monthly Annuity Premium Benefit does not apply to TIAA-CREF Supplemental Retirement Annuities (SRAs) or to premiums paid to them.

**Payment of the Monthly Annuity Premium Benefit**

This benefit is not payable directly to you. It will be paid by TIAA as of the first day of each month to be credited to TIAA and/or CREF Group Retirement Annuity contracts for you. Any payment made to such TIAA and/or CREF contracts will be divided according to any option available at the time the payment is made. Payment is subject to TIAA's right to receive proof of continued Total Disability.

3400MAPB                          - 3.4 -                          D-1129

PART 3: DISABILITY BENEFITS

TYPES OF BENEFITS (CONT'D)

**(C) The Annual Benefit Increase**
...will increase the Monthly Income Benefit and the Monthly Annuity Premium Benefit each year by the percentage shown for the Annual Benefit Increase in PART 1 compounded annually as long as the benefit continues to be payable.  The first increase will take effect as of 12 months after the date TIAA benefits are first payable for a term of Total Disability.  Future increases will take effect on the first day of the same month each year thereafter.

---

**PART 3: DISABILITY BENEFITS**

---

**TYPES OF BENEFITS (CONT'D)**

---

**(D) The Survivor Income Benefit**
   ...is determined as shown in PART 1.

   The Survivor Income Benefit is payable as of the first day of the month after your death if you:

   (1) had been Totally Disabled for the full 12 months prior to your death; and

   (2) are survived by one or more Surviving Dependents.

**A Surviving Dependent**
   ...is your:

   (1) spouse; or

   (2) unmarried child who was dependent on you for support and maintenance and who is:

      (a)  less than 19 years of age; or

      (b) 19 but less than 23 years of age and enrolled in a school as a full-time student.

      The term "child" will include your adopted child or step child.

**Payment of the Survivor Income Benefit**
   This benefit is payable by TIAA as of the first day of the month after your death.  Your Surviving Dependent spouse, if living, will receive the full benefit; otherwise, the benefit will be paid in equal shares to all your Surviving Dependent children.  If this benefit is payable to your Surviving Dependent children, TIAA reserves the right to pay the benefit to a person or persons whom TIAA is satisfied should receive the benefit on the children's behalf.  Such payment will discharge TIAA's obligation for that payment.  TIAA will not be liable for the acts or neglects of any person or persons to whom payment is made.

   Proof of your death will be required before the Survivor Income Benefit is paid.  TIAA may also require proof that a dependent is a Surviving Dependent.  All proof must be satisfactory to TIAA.

PART 3: DISABILITY BENEFITS

TYPES OF SERVICES

**Rehabilitation Service**

Rehabilitation services are services that TIAA determines prepare you to work to the fullest extent of your ability. TIAA will give you a written statement of the services, and their extent. The services may include but are not limited to the following:

(1) vocational testing;

(2) job preparation;

(3) career counseling;

(4) retraining; and

(5) work place modification.

**Social Security Disability Assistance**

TIAA can help you to apply for Social Security Disability Benefits. TIAA may also help you appeal a denied application for such benefits. This service will be provided at no cost to you or your Employer.

---

## PART 4: DISABILITIES NOT COVERED

**No Benefits Will Be Paid**

...if Total Disability is caused, or contributed to, by:

(1) an injury or a sickness that is intentionally self-inflicted; or

(2) an injury or a sickness that results from war, declared or not declared.

3400DNC                                   -4.1-                                   D-1129

## PART 5: WHEN INSURANCE CEASES

**Your Insurance Will Cease**

...on the earliest of the following events:

(1) the date the group policy terminates; or

(2) the date the group policy is changed to terminate insurance on the class of Employees to which you belong; or

(3) the date you stop Active Work in an eligible class; or

(4) the date that ends the period for which you made the last required premium contribution, if any.

If you are no longer Actively at Work due to a leave of absence or a Total Disability, ask your Plan Administrator when your insurance ceases. Your Plan Administrator is listed in "PART 9: ERISA".

If your insurance ceases, it will not affect your benefits for a Total Disability existing on that date.

3400WIC                                          - 5.1-                                          D-1129

---

**PART 5: WHEN INSURANCE CEASES (CONT'D)**

---

**CONVERSION OF TOTAL DISABILITY INSURANCE**

---

**When Your Total Disability Insurance Ceases**
...under the group policy due to termination of your employment with the Policyholder, you may purchase insurance under a conversion policy without providing proof of good health. Insurance under a conversion policy will be issued under the following requirements and terms:

**Terms Relating to Your Coverage Under the Group Policy**
...are:

    (1) You must have been insured under the group policy for at least 12 continuous months. These months must directly precede the date your insurance ceases. Your insurance, if any, under a group policy this policy replaced can be counted in these 12 months; and

    (2) Your insurance must have ceased solely because your employment with your Employer terminated; not as a result of: termination of the group policy; termination of insurance on the class of Employees to which you belong; or your transfer to a class of Employees not eligible for insurance under the group policy; and

    (3) Your insurance must not be ceasing because of your retirement; and

    (4) You must not be Totally Disabled under the group policy.

**Other Terms**
...are:

    (1) You must apply for insurance under the conversion policy and pay the first premium within the Conversion Period shown in PART 1; and

    (2) You must not be eligible for insurance under any other employer's group disability plan within the Conversion Period.

3400WIC2                                         - 5.2 -                                         D-1129

---

### PART 5: WHEN INSURANCE CEASES (CONT'D)

---

### CONVERSION OF TOTAL DISABILITY INSURANCE

---

**When Your Total Disability Insurance Ceases**
...under the group policy due to termination of your employment with the Policyholder, you may purchase insurance under a conversion policy without providing proof of good health. Insurance under a conversion policy will be issued under the following requirements and terms:

**Terms Relating to Your Coverage Under the Group Policy**
...are:

(1) You must have been insured under the group policy for at least 12 continuous months. These months must directly precede the date your insurance ceases. Your insurance, if any, under a group policy this policy replaced can be counted in these 12 months; and

(2) Your insurance must have ceased solely because your employment with your Employer terminated; not as a result of: termination of the group policy; termination of insurance on the class of Employees to which you belong; or your transfer to a class of Employees not eligible for insurance under the group policy; and

(3) Your insurance must not be ceasing because of your retirement; and

(4) You must not be Totally Disabled under the group policy.

**Other Terms**
...are:

(1) You must apply for insurance under the conversion policy and pay the first premium within the Conversion Period shown in PART 1; and

(2) You must not be eligible for insurance under any other employer's group disability plan within the Conversion Period.

3400WIC2                                    - 5.2 -                                    D-1129

## PART 6: REQUESTING INFORMATION AND APPLYING FOR BENEFITS

### Requesting Information

The Plan Administrator will answer any written question or request that you have about enrollment, participation or other administrative matters. You will receive a written explanation within a reasonable period of time (not more than 90 days after the Plan Administrator receives your written question or request).

If your request is denied, the explanation will include the reasons for the denial, a description of any materials necessary to complete the request, and an explanation of why this material is necessary. And, it will tell you how to apply for a review if you are not satisfied with the explanation.

### (A) Applying for Review

If your request is denied or you are not satisfied with the response, you may ask for a review. Write directly to the Plan Administrator within 60 days of receiving your answer. You or your duly authorized representative may examine any documents pertaining to your question or request. You are encouraged to submit issues and comments to the Plan Administrator. You will receive a decision in writing on the review within a reasonable time (not more than 60 days).

### (B) Delays

If special circumstances require a delay on a request or question, the Plan Administrator will notify you. The notice will explain reasons for the delay and when you can expect a decision. If it is a delay on the initial request or question, the Plan Administrator will inform you not more than 90 days after the day the request was submitted and will send a decision not more than 90 days after the notice of the delay. If the delay is on a request for review, the Plan Administrator will notify you of the delay not more than 60 days after the request date and will send a decision not more than 60 days after the notice.

### (C) Service of Legal Process

Service of legal process on any administrative matter should be directed to the Plan Administrator.

### Applying for Benefits

When you anticipate that your Total Disability will extend beyond the end of the Elimination Period shown in PART 1, you should request an application for benefits. The Plan Administrator can supply the application and help you complete it. You should also apply for Social Security disability benefits and any Workers' Compensation benefits at the same time.

When an application for benefits is received, TIAA will process it promptly.

### (A) Time Limits

Time limits for sending the application for benefits can be found in this certificate in "PART 7: GENERAL PROVISIONS."

D-1129

PART 6: REQUESTING INFORMATION AND APPLYING FOR BENEFITS (CONT'D)

**(B) Denied Application for Benefits**

If TIAA denies an application for benefits, you will receive a written denial within a reasonable period of time (not more than 90 days). TIAA will specify the reason(s) for the denial, the provisions of the contract on which the denial is based, and how to ask for a review.

When appropriate, TIAA's letter will also describe any material which might complete or perfect the application and will explain why the material is needed.

**(C) Asking for a Review**

You may ask for a review of a denied application for benefits by writing directly to TIAA within 60 days of receiving the denial. You or your duly authorized representative may examine documents pertaining to your application. You are encouraged to submit issues and comments to TIAA. You will receive a decision of the review within a reasonable period of time (not more than 60 days).

**(D) Delays**

If special circumstances require a delay in evaluating an application for benefits, TIAA will notify you. The notice will explain the reason for the delay and when a decision can be expected.

If it is a delay on an initial application, TIAA will notify you not more than 90 days after the day the application was submitted and will send a decision not more than 90 days after the notice of delay. If the delay is on a request for review of a denied application for benefits, TIAA will notify you of the delay not more than 60 days after the request date and will send a decision not more than 60 days after the notice.

TIAA will comply with any shorter time limits which may be required by the laws or regulations of the state in which the group policy is issued.

**Requests for Information About Your Insurance**

Please direct any written request for information about the TIAA Total Disability Benefits policy, its terms, conditions, interpretations, application for benefits thereunder, review of an application, and the service of legal process to: Teachers Insurance and Annuity Association, 730 Third Avenue, New York, New York 10017-3206.

D-1129

---

**PART 7: GENERAL PROVISIONS**

---

**Notice of Claim, Proof of Total Disability and Other Proofs**

TIAA must receive in writing both notice of claim and proof of Total Disability within 12 months after the start of Total Disability.

**(A) Written Proof**

Forms for filing proof will be sent to you or to your Employer when TIAA receives written notice of a claim. If forms are not sent within 15 working days after TIAA's receipt of notice, you will be deemed to have met the group policy's condition for filing proof by submitting in writing, within the required 12 months, proof of the occurrence, character and extent of the Total Disability. Written proof of continued Total Disability is required at reasonable intervals to be determined by TIAA. All proof must be satisfactory to TIAA.

**(B) Delays in Giving Notice or Proof**

No claim will be denied or reduced if it is shown that it was not reasonably possible for you to give notice of claim or proof of Total Disability at the time it was required and such notice or proof is given as soon as reasonably possible.

**(C) Types of Proof**

TIAA may require as part of the proof of Total Disability: statements of treating physicians; copies of test reports or examinations; x-rays; hospital records; medical examinations by impartial specialists at TIAA's expense; investigations conducted by TIAA or outside agencies. TIAA will have the right and the chance to examine you at such times as it may reasonably require during the time a claim is pending.

**(D) Other Proofs**

Other proofs that TIAA may require are: sufficient evidence that you have applied for all of the Benefits From Other Sources; and prompt receipt of all written benefit decisions made by the providers of the Benefits From Other Sources; employment records, financial records, including copies of tax returns for you and for any business in which you participate as a principal; and any other information TIAA may reasonably require to determine benefits payable. TIAA may also require records that are in your Employer's control or custody, and may require one or more interviews with you.

3400GP1                                    - 7.1 -                                    D-1129

## PART 7: GENERAL PROVISIONS (CONT'D)

**Overpayment of Benefits**

Any overpayment of benefits must be repaid to TIAA.  To recoup the amount overpaid, TIAA, at its option will:

(1) require that the amount be repaid by you or your Surviving Dependents to TIAA in one sum; or

(2) withhold the amount from your future benefits payable under the group policy; or

(3) take any legal action it deems necessary.

**Assignment**

You may not assign any insurance provided under the group policy.  Any such action will be void and of no effect.

**The Group Policy**

TIAA and your Employer may agree to terminate or change any part of the group policy without your consent.  Such termination or change will not affect your benefits for a Total Disability which then exists.

Also, the group policy will terminate due to non-payment of premiums by your Employer in accordance with the terms of the group policy.  And, TIAA may terminate the group policy as of any date set forth below by giving notice in writing which is mailed to your Employer at least 90 days before this date:

(1) The date of the group policy's anniversary; or

(2) Any premium due date, if on a prior premium due date the participation requirements set forth in the group policy have not been met.

**Legal Proceedings Against TIAA**

No action or suit will be brought to recover under the group policy unless it is brought later than 60 days after proof of Total Disability has been given as required by the group policy.  No such action will be brought at all unless it is brought within 2 years from the end of the time within which proof of Total Disability is required by the group policy.

PART 7: GENERAL PROVISIONS (CONT'D)

**Service of Process Upon TIAA**

TIAA will accept service of process in any action or suit against it on the group policy in any court of competent jurisdiction in the United States, Puerto Rico or Canada, if such service is properly made. TIAA will also accept such process sent to it by registered mail if the plaintiff is a resident of the state, district, territory, or province in which the action or suit is brought. This provision does not waive any of TIAA's rights, including the right to remove an action or a suit to another court.

**Incontestability**

After your insurance has been in force for 2 years, no statement made by you as to your insurability will be used to contest the validity of your insurance with respect to which the statement was made, nor unless the statement:

(1) is in writing; and
(2) is signed by you; and
(3) a copy is, or has been, given to you.

3400GP3                          - 7.3 -                          D-1129

## PART 8: DEFINITIONS

**Where Used In This Certificate, The Following Terms Have The Meaning Set Forth Below**

**Written Election**
...is your signed request for insurance. In the request, you authorize your Employer to deduct funds from your wages for the cost of the insurance.

**Total Disability or Totally Disabled**
...is

(1) for the Elimination Period shown in PART 1, and for the next 24 months, being completely unable due to sickness, bodily injury, or pregnancy to perform the material and substantial duties of your Normal Occupation; and

(2) after those 24 months, being unable due to sickness, bodily injury, or pregnancy to perform the material and substantial duties of any occupation for which you are reasonably qualified by education, training, or experience.

You must be under the Regular Care of a Physician, other than yourself or a member of your family.

**Normal Occupation**
...includes only the essential functions of your occupation that are usually performed for the same type of occupation and that cannot be reasonably omitted or modified considering the normal physical, educational and skill requirements that are needed by the persons who are working in the same occupation.

**Regular Care**
...is:

(1) regular in-person visits with your Physician as frequently as required under standard medical practice to effectively manage and treat your disabling sickness or injury. Your Physician must be a Physician whose specialty, expertise and experience are appropriate for the care and treatment of your Total Disability; and

(2) a reasonable program of care and treatment that is, in accordance with accepted medical practice, expected to enhance your ability to work, and which is provided by a Physician whose specialty, expertise and experience are appropriate for the care and treatment of your Total Disability. This (2) will not apply if TIAA determines that under accepted medical practice there is no reasonable program of care or treatment for your disabling condition that will enhance your ability to work.

**Active Work or Actively at Work**
...is performing for wages that are paid regularly by your Employer, the material and substantial duties of your occupation at the usual place of work or at any alternate place of work required by your Employer.

3400DE1                           -8.1-                          D-1129

## PART 8: DEFINITIONS (CONT'D)

**Monthly Wage Base**

...is one-twelfth of your basic annual wage payable by your Employer at the start of a term of continuous Total Disability.  The basic annual wage excludes overtime pay, bonuses, and other types of extra compensation.  (If your basic annual wage consists of other than 12 monthly payments, your Monthly Wage Base will be one-twelfth of the total annual amount of such payments.)

**Physician**

...is a physician legally licensed to practice medicine and surgery, or is a person who has a doctoral degree in Psychology (Ph.D. or Psy.D.) and who primarily treats patients.

## PART 8: DEFINITIONS (CONT'D)

**Benefits From Other Sources**
...are benefit amounts available or provided to you as set forth below. One sum amounts will be divided into monthly amounts to be applied during the time for which the sum was applicable or is estimated by TIAA to have been payable.

**(A) Social Security or Similar Benefits**
...are any benefit amounts that are payable for disability or retirement on your wage record under the Social Security Act of the United States or any similar United States or foreign government program.

(1) Included in these amounts are benefits that are payable to you and to your dependents who are defined as such in the act or program. Any reduced amounts payable for your retirement will be included only if such amounts are elected. Any retirement benefit amounts being paid to you at age 70 or over will not be included if the amounts were being paid prior to the date Total Disability started.

(2) These amounts will be determined under the provisions of the act or program in effect at the time TIAA benefits are first payable for a term of Total Disability.

(3) These amounts, except any reduced retirement benefits, will be deemed payable and offset accordingly unless the required application and all available appeals have been filed with and declined by the government program. Before receipt of the government program's final written benefit decision, TIAA will estimate the amounts that are payable and will use the estimate to determine the amount of Benefits From Other Sources. If the TIAA estimate and amounts awarded differ, TIAA will adjust Benefits From Other Sources accordingly after it receives the final written benefit decision.

(4) If these amounts decrease or stop because you:

(a) perform work for wages which exceed the amount permitted to be earned under the act or program; or

(b) refuse to accept rehabilitation under the act or program;

TIAA will not adjust Benefits From Other Sources to reflect the change.

**PART 8: DEFINITIONS (CONT'D)**

**(B) Workers' Compensation or Similar Benefits**
...are any benefit amounts, including one sum amounts and any form of settlement that are payable under any Workers' Compensation Law or similar law.

Benefits From Other Sources will not include amounts paid to you for a continuous disability that starts before a Total Disability for which benefits are payable under the group policy.

**(C) Other Plan Benefits**
...are any benefit amounts that are payable for Total Disability under any plan to which your Employer contributed or for which your Employer deducted funds from your wages.

**(D) Other Payments**
...are any amounts that are paid under your Employer's sick leave or salary continuation program and any wages that are payable by your Employer.

**Changes in the Amounts of Benefits From Other Sources**
...will not be made by TIAA for:

(1) any cost of living increase that takes effect in such benefits after the date TIAA benefits are first payable for a term of Total Disability; or

(2) any increase in such benefits that is payable for dependents who are acquired after the date TIAA benefits are first payable for a term of Total Disability.

If any other change occurs in the amounts of Benefits From Other Sources, except as set forth above in (A) (4), the amount of benefits payable by TIAA after the date of the change will be adjusted to reflect the change.

3400DE3                                   - 8.4 -                                   D-1129

## PART 9: EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA)

### Statement of Your Rights Under The ERISA Law

As a participant in this Total Disability Plan, you are granted certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). In accordance with ERISA, you are entitled to:

(1) Examine, without charge, at the Plan Administrator's office and at other specified locations, such as work sites and union halls, all plan documents, including any collective bargaining agreement and copies of all documents filed by the plan with the U.S. Department of Labor and Internal Revenue Service, such as detailed annual reports and plan descriptions.

(2) Obtain copies of all plan documents and other plan information upon written request to the Plan Administrator. (The Plan Administrator may make a reasonable charge for the copies.)

(3) Receive a summary of the plan's annual ERISA report to the Internal Revenue Service. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA. If your claim for a welfare benefit is denied in whole or in part, you must receive a written explanation of the reason for the denial. You have the right to have the Plan Administrator review and reconsider the denied applications or requests on eligibility, participation, contributions, or other aspects of the operation of the plan, and to have TIAA review and reconsider denied claims under the Group Insurance contract.

Under ERISA you may take steps to enforce these rights. For example, if you request materials from the Plan Administrator and do not receive them within 30 days you may file suit in federal court, in which case the court can require the Plan Administrator to provide the materials and pay you up to $100 a day until you receive the materials, unless of course the materials were not sent due to reasons beyond the control of the Plan Administrator. If a claim for benefits is denied or ignored, in whole or in part, you may file suit in a state or federal court. If the Plan Administrator's responsibility to remit plan premiums is not discharged according to the terms of this plan or if you are discriminated against for asserting your rights under ERISA, you may seek assistance from the U.S. Department of Labor, or may file suit in a federal court. The court will decide who should pay the court costs and the legal fees. If you are successful, the court may order the person sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees for example, if the court finds the claim is frivolous. Contact your Plan Administrator if you have any questions about this plan. If you have any questions about this statement or about your rights under ERISA, you should contact the nearest Area Office of the U.S. Pension and Welfare Benefits Administration, Department of Labor.

## PART 9: EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA) (CONT'D)

**EMPLOYER IDENTIFICATION
NUMBER (EIN):**          53-0196932

**PLAN NUMBER:**          504

**PLAN EFFECTIVE DATE:**   December 11, 1968

**PLAN ANNIVERSARY:**      January 1

For information regarding the plan or service of legal process upon the plan, the Plan Administrator
should be contacted.

**THE PLAN ADMINISTRATOR IS:**

National Academy of Sciences
2101 Constitution Avenue, NW
Washington, District Of Columbia 20418
(202) 334-2000

**FOR INFORMATION CONTACT:**

National Academy of Sciences
2101 Constitution Avenue, NW
Washington, District Of Columbia 20418
(202) 334-2000

**EXHIBIT 2**



The
STANDARD℠
INSURANCE

March 15, 2005

Sonya Pettaway
9523 E Quaker Rd Apt 205
Disputanta VA 23842

Re:    National Academy of Sciences
       Policyholder No. 131333
       Claim No. 00TB7209, 00TB7210

Dear Ms. Pettaway:

The Quality Assurance Unit has completed its review of the decision to close your long term disability (LTD) claim. This was an independent review, conducted separately from the individuals who made the original determination. After carefully considering all the information in your claim file, we find that the correct decision was to close your claim with payment to you through August 31, 2004. The basis for this decision is discussed below.

In her letter dated August 12, 2004, Carmen Lourensz, Senior Disability Benefits Analyst, explained to you that your LTD claim had been closed with payment to you through August 31, 2004. In this letter, Ms. Lourensz outlined difficulties in obtaining information from you, and with scheduling an Independent Medical Evaluation (IME) and Functional Capacities Evaluation (FCE), which were requested to assist in determining your physical functional abilities in light of your medical condition. Ms. Lourensz explained that as The Standard had not been provided sufficient information to support continuing disability, your LTD claim had closed.

You requested a review of this decision in your letter dated October 18, 2004, received by The Standard on October 22, 2004. You enclosed the following information with your letter to be considered in Ms. Lourensz's review of your claim:

- A post myelogram CT scan of the lumbar spine, performed on February 21, 2003

- Document DEA# AS6929535, dated March 6, 2003

- A letter dated January 23, 2004, written by Dr. Stopak

- Dr. Stopak's Supplemental Neurosurgical Reports dated June 24, 2004 and September 16, 2004

- An Ortho/Neuro Physician's Report, completed by Dr. Stopak on September 17, 2004

As explained in prior correspondence, to be eligible for LTD benefits, you must meet the Definition of Disability as outlined in the National Academy of Sciences group policy, which appears as follows:

**Disability or Disabled**
   ...is either:

(1)  (a)   for the Elimination Period shown in PART 1, and for the next 24 months, being completely unable due to sickness, bodily injury, or pregnancy to perform the material and substantial duties of your Normal Occupation; and

Standard Insurance Company  900 SW Fifth Avenue  Portland OR 97204-1235  503.321.7000 Tel

Sonya Pettaway                          2                          March 15, 2005

(2)  after those 24 months, being unable due to sickness, bodily injury, or pregnancy to perform the material and substantial duties of any occupation for which you are reasonably qualified by education, training, or experience.

You must be under the Regular Care of a Physician, other than yourself or a member of your family.

Normal Occupation is defined as including only the essential functions of your occupation that are usually performed for the same type of occupation and that cannot be reasonably omitted or modified considering the normal physical, educational and skill requirements that are needed by the persons who are working in the same occupation.

A copy of the Definition of Disability provision is enclosed with this letter.

The information in your file indicates that due to communication difficulties, you did not attend the FCE and IME, which had been scheduled to occur on July 26, 2004 and July 27, 2004, respectively. We understand from your October 18, 2004 letter that the correspondence detailing the appointment date and time was sent to an incorrect address. However, on January 8, 2005, Ms. Lourensz wrote to you and explained that The Standard would be willing to reschedule these evaluations. Ms. Lourensz addressed this letter to three possible addresses for you, as follows:

- 9523 East Quaker Road Apt 205, Disputanta, VA 23842
- PO Box 815, Prince George VA 23875 (the return address on your request for review)
- 4260 31st North Terrace, Hollywood FL 33021

Please note that all correspondence sent to PO Box 815, Prince George, VA 23875, subsequent to your request for review has been returned as undeliverable.

The information in your file does not indicate that you expressed interest in undergoing these evaluations as offered by Ms. Lourensz in her January 8, 2005 letter. While the attempts to schedule an IME and FCE have been unsuccessful, please understand that the issue upon which we must focus is whether the medical information in your file supports that you continue to meet the Definition of Disability as outlined in your group policy.

As explained above, for the first 24 months that benefits are payable to you, your eligibility for benefits is determined by your inability to perform the material and substantial duties of your Normal Occupation. After those 24 months, you are entitled to benefits if you are unable to perform the material and substantial duties of any occupation for which you are reasonably qualified by education, training, or experience. As benefits first became payable to you beginning August 1, 2000, Part (2) of the Definition of Disability applied to your claim as of August 1, 2002.

The information in your file indicates that you were hired as a Technical Trainer on November 15, 1999. Under the terms of your group policy, your insurance became effective beginning December 1, 2000, which represents the first day of the month falling on or next following the date you entered an eligible class. You have claimed disability as of January 11, 2000 due to injuries resulting from a motor vehicle accident on January 10, 2000.

The medical information provided documents that you presented to the urgent care clinic on January 10, 2000 with complaints of back pain, which radiated down your leg to your toes. You reported to the attending physician that you were involved in a motor vehicle accident that morning. You were driving in your vehicle when you were hit in the driver's side by another

60-26040-deisele-7209.doc

Sonya Pettaway                          3                    March 15, 2005

vehicle. You were noted to have been wearing your seatbelt. You experienced no loss of consciousness and no head injury. You also had complaints of right big toe pain and right knee pain, which were noted to be unrelated to the motor vehicle accident, but rather due to a prior fall. You were prescribed Flexeril and Motrin, and were recommended to follow up with your primary care physician in one week.

You presented to the urgent care clinic again on February 2, 2000 with complaints of loss of bowel movement control the night before, as well as continued back pain. You were recommended to follow up with orthopedics the next day. You were seen by Pamela Cobb, M.D. (Orthopedic Physician), on February 3, 2000. She recommended that you undergo an MRI to evaluate for disc herniation. This test was performed on February 8, 2000, and revealed focal protrusion versus small central disc herniation at L4-5 indenting the thecal sac, and mild lumbar spondylosis.

You underwent a neurological consultation on February 24, 2000, performed by Laura Isensee, M.D. Dr. Isensee assessed low back and bilateral lower extremity pain and paresthesias. While she felt that your symptoms might be radicular to some extent, she felt that a large component of your symptoms were myofascial. She advised you that she felt you would eventually recover completely. She recommended treatment including a course of Prednisone and physical therapy.

You were evaluated by Rafael Lopez, M.D. (Orthopedic Surgery), on August 8, 2000, who recommended a course of manipulative treatment and that you change your medication to Lodine. He indicated that you were capable of modified duty at that time.

You contacted Racquel Williams, Group Benefits Analyst, on September 5, 2000 and indicated that you would be seeing a new doctor, Bernard Stopak, M.D. (Neurological Surgery). The medical information in your file indicates that you have been primarily treated by Dr. Stopak since you initiated treatment with him on September 7, 2000. The medical information in your file documents medical treatment from Dr. Stopak for the period of September 7, 2000 through September 17, 2004. Please understand that, in reviewing your claim, we have considered all of the medical information in your claim file. However, our review has focused on the information documenting medical treatment contemporaneous to the period in question, from September 1, 2004 to the present.

Based upon his initial evaluation of you on September 7, 2000, Dr. Stopak assessed ruptured lumbar disc at L3-4 and L4-5. He recommended surgical decompression in the form of bilateral lumbar laminectomies and discectomy at the L3-4 and L4-5 levels. This surgery was performed by Dr. Stopak on September 15, 2000. Postoperative office visits with Dr. Stopak indicate that while he had initially noted satisfactory progress, due your continued pain complaints, he subsequently felt that your prognosis was guarded.

More recent medical information from Dr. Stopak includes documentation of an evaluation performed by him on February 4, 2003. At that time, you were noted to be over two years status post surgery. Dr. Stopak indicated that you did get some relief with regard to your bowel incontinence, which was noted to be normal at that time. You also reported improved balance and that you no longer tripped when you walked, as you had done prior to your surgery.

60-26040-deisele-7209.doc

Sonya Pettaway                    4                    March 15, 2005

However, you reported that you experienced urinary incontinence when performing activities such as laughing, carrying, or lifting. You indicated to Dr. Stopak that your back and leg symptoms were aggravated by a fall on January 16, 2003 at the Caesar Hotel in Atlantic City. Dr. Stopak assessed the following:

1. Residuals of previous surgery.

2. Rule out recurrent disc and instability with arachnoiditis and cauda equina compression with resultant cauda equina syndrome.

Dr. Stopak recommended further neurodiagnostic studies in the form of a lumbar myelography and CT scan.

On February 21, 2003, you underwent a post myelogram CT scan of the lumbar spine, which revealed the following:

1. Mild circumferential disc bulge at L3-4 mildly flattening the anterior dural sac and mildly encroaching upon the right neural foramen.

2. Minimal circumferential disc bulge at L4-5.

A lumbosacral myelogram also performed on this date revealed the following:

1. Mild ventral extradural defect at L3-4.
2. Stable first degree retrolisthesis at L4-5.

You were next seen by Dr. Stopak on April 24, 2003, on which date he noted that surgery had been scheduled for April 2, 2003. However, you had cancelled the surgery because you were going to a medical hearing and you needed to reschedule this procedure. You reported to Dr. Stopak that you were involved in another motor vehicle accident on April 22, 2003, which had exacerbated your back and leg pain. Dr. Stopak recommended that you proceed with your surgery, which would involve total decompressive lumbar laminectomy at L3 4 and L4-5, with discectomies and fusion with instrumentation and bone. On July 8, 2003, Dr. Stopak noted that you would require a period of recovery of three to six months following this procedure, after which time you would be capable of returning to work with restrictions of no excessive bending and no lifting over 20 pounds.

In a Supplemental Neurosurgical Report dated October 9, 2003, Dr. Stopak indicated that your surgery had not yet been rescheduled as you were just recently able to obtain your Medicaid card. He indicated that there had been no change in your condition. On December 9, 2003, he noted that there had been no change with regard to your low back and bilateral leg pain. He indicated that your surgery would be rescheduled to take place in the spring of 2004. In the meantime, you continued on Bextra 10 mg, one every other day. He noted again on June 24, 2004 that your surgery had not yet been rescheduled.

As noted above, you provided additional medical information for our consideration with your request for review. This information included a completed Ortho/Neuro Physician's Report, completed by Dr. Stopak on September 17, 2004. On this form, Dr. Stopak provided a primary diagnosis of ruptured lumbar disc at L3-4 and L4-5, and a secondary diagnosis of spondylolisthesis at L4-5 with instability. Dr. Stopak indicated that you are completely unable to walk, sit, stand, lift, carry, push, pull, or perform repetitive actions with your hands. He indicated as well that you were completely unable to drive, balance, bend, stoop, twist, squat,

60-26040-deisele-7209.doc

Sonya Pettaway                          5                          March 15, 2005

kneel, crouch, crawl, climb stairs and ladders, or reach at, below, and above shoulder level. We would like to point out that Dr. Stopak subsequently indicated that his comment that you have upper extremity limitations and restrictions was made in error. Your current treatment at that time included medication treatment with Bextra and Celebrex. He indicated you would be capable of returning to work in three months following your recommended surgery.

You provided a copy of a chart note related to an office visit with Dr. Stopak on September 16, 2004. On this date, you presented with continued complaints of severe low back pain which extended into your right buttock particularly, and your right leg along the anterior and lateral aspect. Dr. Stopak noted that there was associated numbness, tingling, and subjective weakness of the leg. On examination, you were noted to walk with a marked limp, favoring your right leg in a bent over antalgic position. You were noted to experience great difficulty changing positions from sitting to standing and getting onto the examination table.

Examination of your back revealed flatness of the lumbar lordotic curvature. There was diffuse paravertebral muscle spasm tenderness with limitation of motion and forward flexion to 15 to 20 degrees. Dr. Stopak noted that there was bilateral sciatic notch tenderness. Straight leg raising testing was positive on the right at 15 degrees, and cross leg raise testing was positive at 35 degrees. There were no motor, sensory or reflex changes found, nor any pathological reflexes. Dr. Stopak again recommended that you proceed with the planned surgery.

The "Document DEA# AS6929535 dated 3/6/03" referenced in your letter represents a note written by Dr. Stopak, on which he referenced the lumbosacral myelogram and CT scan you underwent on February 21, 2003. The results of this testing are addressed above.

Please note that the lumbosacral myelogram results of February 21, 2003, Dr. Stopak's letter dated January 23, 2004, and his Supplemental Neurosurgical Report of June 24, 2004 had already been obtained by The Standard, and therefore had already been considered in reviewing your claim.

In administering your LTD claim, your file had been reviewed previously by a Physician Consultant, who is board-certified in Occupational Medicine. As part of the Quality Assurance Unit's independent review of the decision to close your claim, your file has been referred to another Physician Consultant, who is board-certified in Internal Medicine. The Physician Consultant noted that lumbar CT myelogram you underwent on February 21, 2003, which demonstrated only mild circumferential disc bulges at L3-4 and L4-5, with possible impingement of the exiting right L3 nerve root within the foramen, and a grade-1 L4-5 retrolisthesis, which was stable on flexion and extension views. The Physician Consultant found that the radiologists' interpretation of this testing, which is specifically outlined earlier in this correspondence, varied significantly from Dr. Stopak's interpretation of "ruptured lumbar discs at L3-4 and L4-5 with a grade 1 retrolisthesis at L4-5 with instability," as stated in his September 6, 2004 Supplemental Neurosurgical Report. The Physician Consultant noted that the only significant finding is that of a possible right L3 nerve root impingement. However, your medical history and physical examination findings are not consistent with an L3 radiculopathy. It was the Physician Consultant's opinion that you are capable of performing full-time work at least at the sedentary level.

60-26040-deisele-7209.doc

Sonya Pettaway                          6                          March 15, 2005

Sedentary work is described as follows in the <u>Dictionary of Occupational Titles</u>, Fourth Edition, Revised 1991, U.S. Department of Labor Employment and Training Administration:

> **S- Sedentary Work** – Exerting up to 10 pounds of force occasionally. (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

Please note that in reviewing your claim, the physical demands of your normal occupations of Technical Trainer have been considered. The Vocational Consultant found that the Occupation of Technical Trainer is considered light level work, which is defined as follows:

> **L- Light Work** – Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

In light of the above, your file has been reviewed by a Vocational Consultant, who found that you are capable of performing other occupations given your education, training, experience, and ability to perform work at the sedentary level, which include, but are not limited to, the following:

1.  Personnel Clerk
2.  User Support Analyst
3.  Administrative Assistant
4.  Payroll Clerk
5.  Budget Clerk
6.  Collection Clerk

In reviewing your claim, the Vocational Consultant noted that you have earned a Bachelor's Degree in Business Administration. You have two years' experience working in the capacity of Technical Trainer, and you have worked in the capacity of Budget Analyst in the past. These occupations exist in your labor market in sufficient numbers to allow reentry into the workforce, and are feasible given your residual functional capacity and your transferable skills, as attained through education and prior work experience.

In summary, you have claimed disability as of January 11, 2000 due to back and leg pain resulting from a motor vehicle accident on January 10, 2000. You underwent bilateral lumbar laminectomies and discectomy at the L3-4 and L4-5 levels on September 15, 2000. However, you have continued to complain of continued back and leg pain. While Dr. Stopak has recommended additional surgery, this surgery has not been performed to date. The information in your claim file suggests that your current treatment consists of medication and periodic office visits with Dr. Stopak.

60-26040-deisele-7209.doc

Sonya Pettaway                              7                        March 15, 2005

As explained above, the Definition of Disability on your claim changed as of August 1, 2002. To remain eligible for benefits after this date, you must be unable to perform the material and substantial duties of any occupation for which you are reasonably qualified by education, training, or experience. While the information in your file supports that you would reasonably be precluded from performing more physically demanding occupations due to your back condition, we have not been provided medical information documenting that your symptoms are of such severity as to preclude full-time work at the sedentary level.

Based on our review, we find that you are capable of performing other occupations for which you are reasonably qualified by your education, training, experience, and physical functional abilities. As you no longer meet the Definition of Disability under the terms of your group policy, we find that the decision to close your claim with payment to you through August 31, 2004 is correct and must be upheld.

We want to assure you that our review was conducted fairly and objectively, taking into consideration all information available to us and the policy provisions applicable to your claim. We also want to let you know that upon further investigation, other valid reasons for limiting or closing your claim could come to our attention. Therefore, Standard Insurance Company reserves the right to consider and assert any other reasons for limitation or closure of your claim should they occur in the future.

The decision to close your claim has been upheld for the reasons outlined above. If you so request, we will provide you copies of all documents, records and other information relevant to your claim without charge. If you do desire this information, please contact your Benefit Analyst. You also have the right to file suit under Section 502(a) of the Employee Retirement Income Security Act.

Your group policy does not provide voluntary alternative dispute resolution options. However, you may contact your local U.S. Department of Labor Office and your State insurance regulatory agency for assistance.

You are entitled to one independent review under the terms of your group coverage. We have completed that review and we will not be able to be of further assistance to you. This concludes the administrative review process by the Quality Assurance Unit.

Sincerely,

Darci Eisele, FLMI, AIRC
Benefits Review Specialist
Employee Benefits – Quality Assurance

DLE:sem

cc:     Carmen Lourensz – RCONY
        File

60-26040-deisele-7209.doc